Sangamon L. & T. Co. v. Peoples S. B. & T. Co., 204 Ill. App. 7.

## Sangamon Loan & Trust Company, Receiver, Appellee, v. Peoples Savings Bank & Trust Company, Appellant.

### Gen. No. 6,289.

1. BANKS AND BANKING, § 93*—*when agreement for substitution of certificate of deposit for secured notes not defense to action by receiver of insurance company.* Where a certificate of deposit for a certain amount payable in current funds at a certain date was issued by a bank to an insurance company under an agreement that when due such certificate should be surrendered and certain notes secured by trust deed substituted therefor, and such certificate was deposited by the insurance company with the State Superintendent of Insurance as security under the statute, *held* that such agreement would not be enforceable as a defense to an action by the receiver for the insurance company against the bank on such certificate which the State Superintendent of Insurance had turned over to the receiver for the purposes of the receivership.

2. BANKS AND BANKING, § 93*—*when bank sued on certificate of deposit issued to insurance company is estopped from denying value thereof.* Where a bank issuing to an insurance company a certain certificate of deposit for a certain amount, when called upon by the State Superintendent of Insurance with whom such certificate had been deposited as security under the statute for information as to the value of such certificate, replied in writing that it was worth its face value, *held* that the bank would be estopped from denying the value of the certificate as so stated by it, in an action to recover thereon against the bank.

3. INSURANCE, § 45*—*what are powers of receiver of company as to securities turned over to him by State Superintendent of Insurance.* The receiver of an insurance company to whom a security held by the State Superintendent of Insurance on account of the company had been turned over for the purposes of the receivership stands in the place of the State Superintendent and is clothed with the same powers and duties with regard to such security as such and as a trust fund.

4. INSURANCE, § 45*—*what is extent of powers of receiver of insolvent company.* The rights and powers of the receiver of an insurance company are not limited to those possessed by the company with reference to its assets, but he represents also the creditors of the insolvent company and as such representative is in-

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

vested with powers and may do acts that could not be done by a mere representative of the company.

5. INSURANCE, § 45*—*what is extent of powers of receiver of insolvent company.* The receiver for an insolvent corporation is the representative of the corporation with regard to the sources and extent of its title to the property and assets taken over, and cannot assert rights with reference thereto which could not have been asserted and maintained by the corporation.

6. BANKS AND BANKING, § 93*—*what constitutes estoppel of bank to deny difference in character as security of certificate of deposit of insurance company.* Where a bank issued to an insurance company a certain certificate of deposit which the company deposited with the State Superintendent of Insurance as part of the security required by the statute of insurance companies, *held* that the bank would be estopped to deny that as a security such certificate was something different so far as its liability, value, character or efficiency as a security was concerned from what it purported on its face to be, and it would not be necessary, in order to establish such estoppel, to show any fraudulent intent in the bank in issuing such certificate.

Appeal from the Circuit Court of Rock Island county; the Hon. WILLIAM T. CHURCH, Judge, presiding. Heard in this court at the April term, 1916. Affirmed. Opinion filed February 10, 1917.

DIETZ & SINNETT, for appellant.

GILLESPIE & FITZGERALD and SEARLE & MARSHALL, for appellee.

MR. PRESIDING JUSTICE NIEHAUS delivered the opinion of the court.

This is an action of assumpsit commenced by the appellee, Sangamon Loan & Trust Company, receiver for the Northern Life Insurance Company, against the Peoples Savings Bank & Trust Company, appellant, to recover on a certificate of deposit for $2,500 issued by the Peoples Savings Bank & Trust Company, to the Northern Life Insurance Company, and which had been deposited by the Northern Life Insurance Company as a part of the securities required by the statute

to be deposited with the superintendent of insurance and which under an order of court had been turned over to the receiver by the superintendent of insurance for the purposes of the receivership.

It is claimed by appellant bank, as a defense to the suit, that the certificate in question was issued by the appellant bank, with other like certificates under a valid written agreement which it had made with the president of the Northern Life Insurance Company, acting for the company, in which it was stipulated with the Northern Life Insurance Company that when the certificate became due it would be returned to the bank, with the other certificates, and exchanged for certain promissory notes amounting to $15,000, and a mortgage securing them, and that the Northern Life Insurance Company could not, therefore, legally enforce the payment of the certificate as provided in the certificate; that the Northern Life Insurance Company was bound by its agreement, and that the receiver, who was appointed to take charge of the assets of the company, has no greater rights in the premises and with reference to this asset of the company than the company itself would have had against the appellant bank.

There was a trial by the court, which resulted in a judgment in favor of the appellee and against the appellant for $3,103.47, the amount due on the certificate, from which judgment this appeal is prosecuted. It appears from the evidence that the Northern Life Insurance Company was regularly organized in the year 1908, under the Act of the General Assembly approved March 26, 1869, and in force July 1, 1869; and that it had deposited with the superintendent of insurance the securities to the amount of its capital stock, as required by the statute, and that these securities, including the one in question, which had been accepted, and held by the superintendent of insurance in conformity with the law. That in De-

cember, 1910, Hope Thompson, president of the Northern Life Insurance Company, was desirous of negotiating a loan for the Northern Life Insurance Company with Pierre D. Southworth, the owner of a piece of property known as the "Sunset Ranch" in Lincoln County, New Mexico, and thereby dispose of some of the shares of treasury stock of the Northern Life Insurance Company and other shares of stock of the company held by a stockholders' syndicate, of which Charles W. Lundahl, a cashier of the appellant bank, and Thompson himself, were members, and with these ends in view made an arrangement with the appellant bank, represented by its vice president, Nelson H. Greene, to finance the transaction.

In order to do so it was necessary to get $12,500 in cash to be turned over to Southworth, with the shares of the capital stock of the Northern Life Insurance Company to be transferred. It was arranged that Southworth execute a trust deed for the so-called "Sunset Ranch" in New Mexico, securing promissory notes for $25,000—and of these notes three are involved in this suit, namely, one for $5,000, and one for $6,000 and one for $4,000. Southworth executed the notes and trust deed contemplated in the arrangement on December 10, 1910, and they were sent by mail to and received by the appellant bank. After the appellant bank had received and had in its possession the Southworth trust deed and notes, Thompson, as president of the Northern Life Insurance Company, arranged with the appellant bank, through its vice president, in order that the necessary cash might be obtained to finance the Southworth loan, that the bank should issue to the Northern Life Insurance Company the certificate of deposit in suit for $2,500 and four other certificates of deposit of a like amount, and one for $1,000, all dated December 13, 1910, due one year after date, and that these certificates be used as securities for deposit with the superintendent of

insurance, and to replace other securities of the Northern Life Insurance Company then on deposit with the superintendent, which were of a character that they could be utilized and converted into cash, of sufficient amount to realize the $12,500 needed for the Southworth loan.

At the time of the issuance of the certificate of deposit in question, and the others involved in the transaction mentioned, the appellant bank, through its vice president, exacted of the president of the Life Insurance Company an agreement in writing to return the certificates when they became due and exchange them for $15,000 of the notes secured by the Southworth trust deed, which agreement was in the form of a letter to the bank, as follows:

"ROCK ISLAND, ILLINOIS, December 13, 1910.
"PEOPLES SAVINGS BANK & TRUST COMPANY,
    Mr. Nelson H. Greene, Vice President,
        Moline, Illinois.
GENTLEMEN:—

We have this day turned over to you Mortgage Notes of P. D. Southworth and wife, amounting to $15,000.00, and secured by Trust Deed on property in Lincoln County, New Mexico, for which you have issued us your Certificates of Deposit No. 4823, 4824, 4825, 4826 and 4827, aggregating a like amount. As this is a loan which we should like to have for our own investment as soon as the Territory of New Mexico is admitted as one of the States of the Union, we herewith agree that when the above mentioned Certificates fall due one year from their date, we will return them to you and take up from the proceeds thereof, the above mentioned Mortgage Notes for $15,000.00.

"Thanking you for your numerous courtesies, we are,
            Yours very truly,
THE NORTHERN LIFE INSURANCE COMPANY OF ILLINOIS,
            HOPE THOMPSON,
(Signed)                    President."

Thereafter and some months prior to the appointment of the receiver for the Northern Life Insurance Company and while the company was still transacting its regular business of life insurance, the superintendent of insurance, in performance of his statutory duty, sent to the Peoples Savings Bank & Trust Company the following communication:

"NOVEMBER 27, 1911.
"PEOPLES SAVINGS BANK & TRUST COMPANY,
    Moline, Illinois.
GENTLEMEN:—
The Northern Life Insurance Company of Illinois, Rock Island, has on deposit in this Department, Certificates of Deposit issued by your bank to said company, as follows:

| No. 4807, | Due | Nov. | 29, | 1911, | $2500.00 |
| No. 4823, | " | Dec. | 13, | " | 2500.00 |
| No. 4824, | " | " | 13, | " | 2500.00 |
| No. 4825, | " | " | 13, | " | 2500.00 |
| No. 4826, | " | " | 13, | " | 2500.00 |
| No. 4828, | " | " | 13, | " | 1000.00 |

"These certificates fall due during the next few weeks. Are they worth their face value at the present time?

"Have any payments been made to the company on any of the above certificates? Should any such payments be made in the future, kindly advise this office at once.

"These certificates are held by this Department in trust and I am desirous of ascertaining this information for the purpose of verification and comparison with my records, and will thank you for a prompt reply and a full answer to my inquiries.

Yours truly,
Insurance Superintendent."

To which communication the appellant bank, through its vice president, made the following reply:

Sangamon L. & T. Co. v. Peoples S. B. & T. Co., 204 Ill. App. 7.

"MOLINE, ILL., December 1, 1911.
"MR. FRED W. POTTER, Insurance Superintendent,
        Springfield, Illinois.
DEAR SIR:—

In reply to your favor of the 27th ult., will say that our records show that we have issued to the Northern Life Insurance Company of Illinois, Certificates of Deposit as per certificates listed in your letter.

"These certificates are worth their face value and no payments have been made on any of them.
                Yours truly,
                        NELSON H. GREENE,
                        Vice-President and Cashier."

On the 20th day of December the Northern Life Insurance Company was declared insolvent, and on the application of the superintendent of insurance the appellee was appointed receiver by the Circuit Court of Sangamon county, and in conformity with an order of the court the certificate of deposit in question was turned over to the receiver by the superintendent of insurance, to be used in marshaling the assets of the company, and utilized in liquidation and adjustment of its financial affairs in accordance with the statute. After the superintendent of insurance had turned over to the receiver the certificate of deposit in question, the receiver made a demand on the appellant for payment of the same, which was refused, because of the agreement which the appellant bank had with the president of the Northern Life Insurance Company, by which the certificates in question and the other certificates were not to be paid according to their terms but were to be returned to the appellant bank and exchanged for the Southworth notes, of like amount, and it is now contended by the appellant that the agreement was binding on the Northern Life Insurance Company and that the receiver has no greater rights in reference to enforcing payment of the certificate in question than the insurance company would have in a suit between the company and the appellant bank.

While the general contention of appellant concerning the rights and powers of a receiver is sustained by the case of *Republic Life Ins. Co. v. Swigert,* 135 Ill. 150, it is clear that there is another element involved in the case at bar, which did not enter into the consideration of the case cited. It may be conceded that the general rule is as claimed by appellant, that a receiver appointed for an insolvent corporation is the representative of the party whose estate and assets takes over, with regard to the sources and the extent of his title, and that he cannot assert rights with reference to such property as assets, which could not have been asserted and maintained by the insolvent corporation. But in this case the certificate of deposit, while an asset of the corporation, has another character and function, which the statute gives it, namely, that of a security that had been deposited and held as a trust fund for the benefit of policy holders, or the beneficiaries, of the life insurance policies issued by the Northern Life Insurance Company.

The evidence conclusively shows that the certificate of deposit in question was issued by the appellant bank to be used as one of the securities for deposit with the superintendent of insurance. By issuing it, the appellant bank represented it to the superintendent of insurance to be exactly what it purports to be upon its face. The certificate recites that a deposit had been made by the Northern Life Insurance Company in the bank, for the amount stated in the certificate, and that the amount stated in the certificate was payable by the appellant bank in current funds a year after its date. The appellant bank intended that the superintendent of insurance should accept it as a security for what it purported to be on its face, and he did so accept it, and by the well-recognized principles of estoppel the appellant is not now in position to deny that as a security it is something different so far as its liability,

or the value, or character, or efficiency as a security, is concerned, from what it purports to be on its face. (*New England Fire Ins. Co. v. Haynes,* 71 Vt. 306; *Smyth v. Munroe,* 84 N. Y. 354; *Lyons v. Benney,* 230 Pa. 117; *State Bank of Pittsburg v. Kirk,* 216 Pa. 542; *People's Bank of California v. Stroud,* 223 Pa. 33; *Cushing v. Perot,* 175 Pa. St. 66.) Nor is it necessary that it should appear that appellant bank had any fraudulent intent in issuing the certificate before the doctrine of estoppel can apply. (*Milligan v. Miller,* 253 Ill. 511.)

We are of opinion that the appellant bank, under the circumstances presented in this case, is estopped to deny that the certificate was not payable at the date it became due in current funds, and that the agreement made, without the knowledge of the superintendent of insurance by the appellant bank, with the president of the Northern Life Insurance Company, relied upon as a defense, cannot be used to defeat a recovery on the certificate in question, in its character as a security and trust fund, and that in this suit the receiver represents not only the insolvent corporation, but with reference to the certificate in question and the obligations growing out of its issuance and deposit as a security and trust fund, he stands in the place of the superintendent of insurance and is clothed with the same powers and duties with regard to it. That the appellant bank is also estopped to deny the statement made by it in answer to the official inquiry of the superintendent of insurance concerning the value of the certificate in suit, which is to the effect that the certificate has the value it purports to have on its face. That the rights and powers of a receiver are not limited to those possessed by the insolvent corporation, with reference to its assets, has been clearly held in *Peabody v. New England Water-Works Co.,* 184 Ill. 625. The court in that case defines the status of a receiver as follows:

"A receiver is to be regarded as the representative not only of the corporation, having power of asserting its rights, taking its title and subject to its liabilities, but occupies a still broader position, for he represents not only the corporation but also its creditors, and under his duties as the representative of the latter class he is invested with powers and may do acts that could not be done by a mere representative of the corporation. It is said in Gluck & Becker on Receivers (p. 177): 'The receiver of an insolvent corporation, while, as a general rule, he is to be regarded as the representative of the corporation, asserting its rights, taking its title and subject to its liabilities, in one respect occupies a broader position, and represents not only the corporation but also the creditors, and when in any proceeding he occupies exclusively the latter status, he may do, and under some circumstances must do, many things which, if his acts were strictly limited to those of a representative of a corporation, he could not do.' "

For the reasons stated the court did not err in entering judgment against the appellant for the amount due on the certificate of deposit in suit, nor was there any error committed in the holding or refusing of the propositions of law submitted by the respective parties. The judgment is affirmed.

*Affirmed.*